# 23-6977

_____

# UNITED STATES COURT OF APPEALS
## For the
## SECOND CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT WILSON,

Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

**BRIEF FOR DEFENDANT-APPELLANT ROBERT WILSON**

Megan Wolfe Benett, Esq.
485 Lexington Avenue, 28th Floor
New York, New York 10017
(212) 973-3406
mbenett@kreindler.com
*Attorney for Defendant-Appellant*
*Robert Wilson*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT OF JURISDICTION............................................................1

QUESTIONS PRESENTED...........................................................................2

STATEMENT OF THE CASE.......................................................................3

STATEMENT OF FACTS ..............................................................................4

  A. Background ...........................................................................................5

  B. The offense conduct ...........................................................................8

  C. The plea proceeding ...........................................................................9

  D. The presentence investigation report and the sentencing submissions............10

  E. Sentencing Hearing ..........................................................................10

  F. The Written Judgment......................................................................12

SUMMARY OF THE ARGUMENT ..........................................................15

STANDARD OF REVIEW ...........................................................................16

ARGUMENT ...................................................................................................18

  A. A defendant must be present for the imposition of a criminal sentence..........18

  B. The district court here failed to justify the "special" conditions in Wilson's presence and they must therefore be vacated....................................19

  C. This Court should clarify that *all* non-mandatory conditions of supervised release must be orally pronounced at sentencing, and the district court here failed to do so, warranting remand on the conditions of supervised release ...21

  D. Certain of the "standard" discretionary conditions delegate excessive authority to the probation department, are vague or overbroad and must therefore be vacated.......................................................................26

CONCLUSION.................................................................................................29

CERTIFICATE OF COMPLIANCE........................................................31

CERTIFICATE OF SERVICE ...................................................................32

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Gall v. United States*, 552 U.S. 38 (2007) ...............................................19
*United States v. A-Abras Inc.*, 185 F.3d 26 (2d Cir. 1999)....................18
*United States v. Anstice*, 930 F.3d 907 (7th Cir. 2019) ..........................24
*United States v. Boles*, 914 F.3d 95 (2d Cir. 2019) .................... 16, 17, 27
*United States v. Brown*, 653 F. App'x 50 (2d Cir. 2016) ........................19
*United States v. Burden*, 860 F.3d 45 (2d Cir. 2017) .............................17
*United States v. Decker*, 838 F. App'x 640 (2d Cir. 2021) .....................29
*United States v. Diggles*, 957 F.3d 551 (5th Cir. 2020).................... 24, 25
*United States v. Franco*, 733 F. App'x 13 (2d Cir. 2018) .......................17
*United States v. Geddes*, 71 F.4th 1206 (10th Cir. 2023).................. 24, 25
*United States v. Juraboev*, 2021 WL 6621136 (2d Cir. Sept. 3, 2021) .................17
*United States v. MacMillen*, 544 F.3d 71 (2d Cir. 2008)........................28
*United States v. Marquez*, 506 F.2d 620 (2d Cir. 1974)..........................18
*United States v. Matta*, 777 F.3d 116 (2d Cir. 2015).............................27
*United States v. Matthews*, 54 F.4th 1 (D.C. Cir. 2020)..................... 23, 24
*United States v. McLaurin*, 731 F.3d 258 (2d Cir. 2013) ................. 17, 20
*United States v. Montoya*, 82 F.4th 640 (9th Cir. 2023)..................... 24, 25
*United States v. Oladimeji*, 463 F.3d 152 (2d Cir. 2006) ........................17
*United States v. Peterson*, 2023 WL 3513568 (2d Cir. May 18, 2023) .................17
*United States v. Reeves*, 591 F.3d 77 (2d Cir. 2010) ..............................19
*United States v. Rodriguez*, 75 F.4th 1231 (11th Cir. 2023) ............. 24, 25
*United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020)...................... 22, 24
*United States v. Rosario*, 386 F.3d 166 (2d Cir. 2004) ..................... 18, 19
*United States v. Thomas*, 299 F.3d 150 (2d Cir. 2002) ...........................22
*United States v. Truscello*, 168 F.3d 61 (2d Cir. 1999)............... 16, 22, 23
*United States v. Washington*, 904 F.3d 204 (2d Cir. 2018)............... 17, 19

## Statutes

18 U.S.C. § 111 .......................................................................... 3, 4, 8, 9
18 U.S.C. § 3231 .................................................................................1
18 U.S.C. § 3583 ................................................................... 19, 23, 25
18 U.S.C. § 3742 .................................................................................1
18 U.S.C. § 3553 ...............................................................................19
28 U.S.C. §1291 .................................................................................1

**Rules**

Fedederal Rule of Appellate Procedure 32(a)(7)(B)..................................................31
Federal Rule of Criminal Procedure 43 ........................................... 18, 26
Second Circuit Rule 32 .................................................................................31
United States Sentencing Guideline § 5D1.3.................................... 23, 24

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of conviction imposed and entered on August 11, 2023, in the United States District Court for the Eastern District of New York (Honorable Eric N. Vitaliano). A timely notice of appeal was filed on August 24, 2023. A. 8.[1] Jurisdiction of this action was in the district court pursuant to 18 U.S.C. § 3231. This Court's jurisdiction is invoked under 18 U.S.C. § 3742(a)(2) and 28 U.S.C. §1291.

---

[1] References to the appendix are noted by "A." followed by the relevant page numbers and the confidential appendix by "CA." followed by the relevant page numbers.

## QUESTIONS PRESENTED

1. Whether the district court's failure to justify on the record the "special" non-mandatory conditions of supervised release constitutes error.

2. Whether the district court's failure to orally pronounce any of the "standard" non-mandatory conditions of supervised release constitutes error.

## STATEMENT OF THE CASE

Robert Wilson appeals from a judgment of the United States District Court for the Eastern District of New York, convicting him, after a guilty plea pursuant to an agreement with the government, of assaulting court security officers at the United States District Court in violation of 18 U.S.C. § 111. A. 13-14, 16-20.

On August 11, 2023, the district court imposed a custodial sentence of 18-months to be followed by three years of supervised release and imposed an order of restitution in the amount of $1,499. A. 105-111.

At sentencing, the district court judge referred to "three years of supervised release" and then directed the deputy clerk of court to "read into the record the other special conditions of supervised release." A. 96. The courtroom deputy recited the three "special conditions of supervised release" that then appeared in the written judgment, but none of the thirteen "standard conditions of supervised release" that also appeared in the written judgment. A. 96-97, 108-109. Of the eighteen total conditions of supervised release imposed via the written judgment, only two were statutorily mandatory. A. 107-109.

Wilson is currently serving his period of supervised release, which is scheduled to expire in December 2026.

## STATEMENT OF FACTS

Robert Wilson, a now-64-year old military veteran who suffered a traumatic brain injury following a 65-foot fall leading to his honorable discharge from the United States Air Force in the 1980s, was struggling through various physical and mental health issues when he engaged in the offense conduct in this case. A. 55-57; CA. 10-12.

Convinced that various federal, state and local governments and their leaders were interfering with his constitutional right to enter into contracts, Wilson had filed a pro se civil lawsuit in the Eastern District of New York. A. 10. Then, on August 10, 2022, in the midst of a mental health crisis, Wilson appeared at the United States Federal Courthouse for the Eastern District of New York in Central Islip for a date he understood he was to appear in court and to file documents relating to his pro se lawsuit. A. 10. He attempted to go to the chambers of the judge overseeing his civil litigation when court security officers, on notice of his identity based on his prior contact with court personnel, went to stop him. A. 10-11. Wilson responded to the officers' efforts to restrain him physically, punching one in the side and then physically resisting efforts to restrain him. A. 11.

A grand jury in the Eastern District of New York indicted Robert Wilson with one count: assaulting a federal officer in violation of 18 U.S.C. § 111. A. 13-

14. The charge carried a sentence of between zero and twenty years, and a statutory period of supervised release of up to three years. A. 16.

## A. Background

Robert Wilson was born on the east end of Long Island in 1959. CA. 8. He was one of two children and his parents were both employed in low-wage jobs but were able to consistently "make ends meet." CA. 9. Wilson started working when he was 10-years old, helping out in a local restaurant his grandparents owned. CA. 9. The Wilson family was close-knit and supported each other emotionally as well as financially. CA. 8-9.

After graduating from high school, Wilson followed in the footsteps of his father, who served in the United States Army, and joined the United States Air Force. CA. 8, 12. He was stationed in Texas and trained as an aircraft propeller technician and a turboprop propulsion technician. CA. 12. His performance reports consistently described him as a "dependable airman" who performed "all of his assignments in an outstanding manner" and characterized him as "a highly motivated individual displaying good judgment and quick thinking in each task he was assigned." CA. 13.

While serving in the Air Force, however, around 1980, Wilson suffered a debilitating injury. While maybe on the wing of an aircraft he was servicing, or perhaps on a ladder or a platform (Wilson cannot firmly recall), he fell a huge

distance – approximately 65 feet – landing on his head and sustaining permanent and life-altering injuries. A. 55.  Wilson was honorably discharged from the military and was, much later, granted disability benefits. CA. 12; A. 56.

Though not formally diagnosed at the time of the catastrophic fall with a traumatic brain injury, those close to Wilson knew immediately that something was not right with him.  Wilson's mother noticed upon his return from the Air Force that he was irritable and impulsive in a way that he had not been prior to the fall. A. 55.  He seemed detached from his family and also at times from reality, expressing paranoia and general anger. A. 55.  Ultimately, medical professionals agreed with what Wilson's mother immediately noted and he later was diagnosed not only with traumatic brain injury but also, among other things, an impulse control disorder. CA. 12.

Over the decades following his injury, Wilson was treated at times for major depressive disorder and post-traumatic stress disorder. CA. 11.  He has repeatedly been hospitalized for observation and stabilization as a result of his mental health issues. CA. 11-12.

Then, in addition to his mood disorders and brain injury, Wilson also developed a complicated array of physical ailments.  He currently suffers from type II diabetes, high blood pressure, gastroesophageal reflux disease, high

6

cholesterol, coronary artery disease, thrombocytopenia and in 2015 had his gall bladder removed. CA. 11.

Though fully disabled as a result of his physical ailments and the brain injury suffered in 1980, Wilson did not receive veteran's disability benefits until very recently. Largely due to the committed and persistent assistance of a nurse practitioner at the VA hospital in Northport, New York, Wilson was finally able to obtain a finding by the VA that he was fully disabled and that his disability was the result of an injury he suffered while on active duty, with his medical conditions connected to his active duty service in the Air Force. A. 56.

Prior to that life-changing finding, however, Wilson worked for decades trying to support himself in a variety of ways. He, for example, started a consulting company that oversaw billing practices for small businesses and worked as a landscaper. CA. 13. But his modest successes were often marred by episodes of impulsive behavior that alienated him from those whose support he most needed. A. 56.

Finally, in the last five years, Wilson appeared to be steadily improving, regularly taking mood-regulating medications, attending therapy and receiving treatment at the VA Northport Hospital. A. 56. Unfortunately, with the onset of the covid-19 health crisis, Wilson lost his in-person counseling, as well as oversight of his medication, and he began to spiral downward. A. 56. This

7

confluence of factors contributed to the lawsuit he filed in 2021, alleging that various federal, state and local government agencies and officials were interfering with his constitutional right to enter into contracts which, in turn, led to the offense conduct in this case.

### B. The offense conduct

Upset and frustrated by what he viewed as a failure by government agencies and representatives to protect his rights and respond to his complaints, Wilson arrived at the United States District Court in Central Islip on August 11, 2022 in a state of pique. He wanted answers from the judge to whom his case was assigned and when he was told that he could not see her and was restrained by court officers, he responded impulsively and physically. Three court security officers went to stop Wilson from going to try to find the judge and he reacted physically, punching one and resisting the efforts by them all to restrain him.

Initially released on bond to be admitted to the VA Northport Hospital for a mental health evaluation he remained on bail for treatment until he was stabilized and then self-surrendered to the United States Marshals Service on or around September 19, 2022. CA. 3.

On December 7, 20202, Wilson pleaded guilty to a single-count indictment pursuant to a plea agreement with the government. A. 16. The plea agreement provided that Wilson would plead guilty to the violation of 18 U.S.C. § 111

8

charged in Count One and the parties agreed that Wilson's exposure under the United States Sentencing Guidelines was 18- to 24-months imprisonment. A. 16.

The plea agreement contained a limited waiver of appellate rights, by which Wilson agreed that he would "not file a direct appeal or otherwise challenge … the conviction or sentence in the event that the Court imposes a term of imprisonment of 24 months or below." A. 18. The waiver was silent, however, as to an appeal of any term of supervised release and the conditions of supervised release. A. 16-20.

### C. The plea proceeding

Wilson appeared before the district court on December 7, 2022 and at that time described the offense conduct, explaining that: "[o]n August 11, 2022, I physically assaulted a court security officer in the Central Islip federal courthouse. I intentionally grabbed him, shoved him against the wall and we fell to the ground. I acknowledge that the officer was injured as a result of the conduct. When other officers arrived, I physically resisted them." A. 47-48. The parties stipulated that the court security officers were federal officers within the meaning of 18 U.S.C. § 111, that they were engaged in the performance of their official duties at the time of the incident and that venue in the Eastern District of New York was proper. A. 48-49. With that, the district court accepted Wilson's plea. A. 49.

9

**D. The presentence investigation report and the sentencing submissions**

The Presentence Investigation Report (PSR) concluded that the offense level was 13, as the parties had stipulated. CA. 5; A. 17. The PSR also calculated Wilson as being in Criminal History Category III, as did the plea agreement. CA. 7; A. 17-18. The PSR calculated the advisory Sentencing Guidelines range as 18-to-24 months imprisonment, as had the parties. CA. 15; A. 17-18. The PSR set forth the statutory and advisory Sentencing Guidelines ranges of time for supervised release, but was silent as to any conditions of supervised release. CA. 16. Similarly, the parties' plea agreement did not address any conditions of supervised release. A. 16-20.

**E. Sentencing Hearing**

As of the August 11, 2023 sentencing hearing, Wilson had already served almost a year in custody at the Metropolitan Detention Center (MDC). A. 89-90; CA. 3. The government asked the district court to impose a "sentence at the high end of the Guidelines" because the "defendant has shown a propensity for violence and a total disregard for the criminal justice system spanning multiple decades." A. 65. In support of its argument, the government referred to Wilson's history of pro se litigation and communications with courts and judicial personnel as well as the instant conduct. A. 65-66. The defense, on the other hand, focused on Wilson's serious brain injury, the lack of support and treatment he had received in the

10

decades following his honorable discharge from the Air Force, his military service and his positive rehabilitation following his arrest in this case. A. 55-57. In addition, the defense raised the excessively punitive conditions of confinement that Wilson suffered at the MDC, where correctional staff failed to regularly and appropriately provide Wilson with the insulin necessary to control his diabetes, placed him in a cell where he could not use his CPAP machine (and thus unnecessarily suffered the consequences of untreated sleep apnea) and experienced the generally awful conditions at the MDC resulting from its chronic understaffing and mismanagement. A. 57-58.

Neither the government nor the defense addressed supervised release in their sentencing submissions or at the sentencing hearing. A. 54-67.

At sentencing, the district court adopted the Probation Department's Sentencing Guidelines range and imposed a term at the low end of that range, sentencing Wilson to 18-months in custody. A. 73-74; 106. In doing so, the district court weighed what it viewed as "fundamental attack … on what the United States of America itself stands for" against Wilson's "mental health challenge," his "service to his country" and the "indications" that Wilson "with appropriate treatment" could "be rehabilitat[ed]." A. 92-95.

As for supervised release, the district court simply announced that following Wilson's incarceration there would be "three years of supervised release." A. 96.

11

Following its recitation of the financial consequences of the conviction, the district court directed the deputy clerk of court to "read into the record the other special conditions of supervised release." A. 96.

The deputy then listed the following conditions:

- "Upon request, the defendant shall provide the U.S. Probation Department with full disclosure of his financial records, including commingled income, expenses, assets and liabilities to include yearly income tax returns … . [T]he defendant is prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts for either personal or business purposes without the knowledge and approval of the U.S. Probation Department [and] … [t]he defendant shall cooperate with the probation officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income and expenses" (A. 96-97);

- "The defendant shall refrain from contacting the victims of the offense" (A. 97);

- "And the defendant shall participate in a mental health treatment program as approved by the Probation Department" (and the "defendant shall contribute to the cost" of those treatment services or prescription medications "to the degree he is reasonable able … .") (A. 97-98).

Those were the only conditions stated on the record. The district court offered no explanation for the imposition of those three non-statutorily mandated conditions and did not refer to any other non-mandatory conditions of supervised release.

### F. The Written Judgment

The district court's written judgment was filed on the same day as the sentencing hearing. A. 105-111. It stated that Wilson was sentenced to 18-months in custody to be followed by a three-year term of supervised release. A. 106-107.

In addition to the mandatory conditions of release, it also set forth 16 discretionary

conditions (described as "standard" and "special"). A. 108-109.  The judgment

included the following language:

### STANDARD CONDITIONS OF SUPERVISION

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job

responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk to another person (including an organization), the probation officer, with prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

A. 108. It also included the three "special" conditions of supervised release that the courtroom deputy had read into the record at the sentencing hearing. A. 109.

Wilson is currently still on supervised release.

14

## SUMMARY OF THE ARGUMENT

A criminal defendant is constitutionally entitled to be present at sentencing. To the extent that a written judgment is inconsistent with a court's oral pronouncement of sentence, the oral judgment (issued with the defendant present) must take precedence over the written one (issued without the defendant present). Further, for a sentence to be procedurally reasonable, a district court must make an individualized assessment when determining whether to impose any non-mandatory condition of supervised release, state on the record the reason for imposing them and have adequate support for those conditions in the record.

Here, though the district court had a clerk describe the three "special" discretionary conditions, it did not explain on the record the reasons supporting the application of any of them. Additionally, the district court did not orally pronounce *any* of the non-statutorily mandated "standard" discretionary conditions.

Several of both the "standard" and "special" discretionary conditions do not even readily appear to have a relationship to the underlying offense conduct, such as the prohibition on opening new financial accounts and the restrictions on travel, or are in direct conflict with the record, such as the requirement that Wilson work full time unless excused from doing so by a probation officer despite the fact that he is legally and medically disabled. The district court's failure to orally

15

pronounce and justify the non-mandatory conditions constitutes procedural error here.

In addressing these arguments, this Court should not rely on *United States v. Truscello*, 168 F.3d 61 (2d Cir. 1999), to rule that the non-mandatory conditions are implicit in every supervised release term and therefore do not need to be specifically imposed or orally pronounced at sentencing. Although some are labeled "standard" while others are labeled "special," they are all discretionary and several of them go well beyond conditions that are essential to the basic functioning of supervised release.

This Court can and should clarify its law in this area and hold that *all* non-mandatory conditions of supervised release must be orally pronounced at sentencing, where a defendant could challenge them. This would bring this Court's law in line with the Fourth, Fifth, Seventh, Ninth, Tenth, Eleventh and D.C. Circuits, which have all held that district courts must orally pronounce at sentencing all non-mandatory supervised release conditions, irrespective of their label as "standard," "special" or otherwise.

## STANDARD OF REVIEW

This Court reviews a challenge to the imposition of supervised release conditions for abuse of discretion. *United States v. Boles*, 914 F.3d 95, 111 (2d Cir. 2019). When a challenge to a condition "presents an issue of law," this Court

16

reviews "*de novo*, bearing in mind that any error of law necessarily constitutes an abuse of discretion." *Id.* (quoting *United States v. McLaurin*, 731 F.3d 258 (2d Cir. 2013)).

Additionally, if an appeal is made to a term of the sentence "and the defendant lacked prior notice in the district court that the term would be imposed," this Court reviews "the issue *de novo* even if the defendant failed to raise an objection in the district court." *United States v. Washington*, 904 F.3d 204, 207 (2d Cir. 2018) (exercising *de novo* review of supervised release condition that was not orally imposed, but was included in written judgment); *see also United States v. Peterson,* 2023 WL 3513568, at *2 (2d Cir. May 18, 2023) ("[w]hen a challenge to a condition of supervised release presents an issue of law, we review the imposition of that condition *de novo*, bearing in mind that any error of law necessarily constitutes an abuse of discretion.") [2]

---

[2] The parties' plea agreement does not address supervised release and Wilson never waived his right to appeal either a term or the conditions of supervised release. *See United States v. Burden*, 860 F.3d 45, 54 (2d Cir. 2017) (per curiam) ("When an appeal waiver is silent regarding a specific aspect of a sentence, this Court generally finds that the appeal waiver does not foreclose challenges to that aspect of the sentence." (alteration omitted)); *United States v. Oladimeji*, 463 F.3d 152, 157 (2d Cir. 2006) (appeal-waiver provisions are construed narrowly and construed "strictly against the Government."); *see also United States v. Franco,* 733 F. App'x 13, 15 (2d Cir. 2018) (though defendant agreed not to "appeal any *term* of supervised release that is less than or equal to the statutory maximum, … he did not waive the right to appeal the *conditions* of supervised release. Accordingly, Franco did not waive his right to appeal the special conditions of supervised release.) (emphasis in original); *United States v. Juraboev*, 2021 WL 6621136, at

**ARGUMENT**

**A. A defendant must be present for the imposition of a criminal sentence**

A criminal defendant has a constitutional right to be present at sentencing and thus when an oral sentence, issued in the presence of the defendant, differs significantly from a written judgment, issued outside the defendant's presence, "the oral pronouncement of sentence must control." *United States v. A-Abras Inc.*, 185 F.3d 26, 29 (2d Cir. 1999); *see also United States v. Marquez*, 506 F.2d 620, 622 (2d Cir. 1974) (because a criminal defendant must be present for sentencing hearings, it is the "oral sentence," not a written judgment, that "constitutes the judgment of the court.") This constitutional right is codified in Federal Rule of Criminal Procedure 43(a)(3), which provides that a "defendant must be present at[] … sentencing."

As a corollary, "[i]t is well settled, as a general proposition, that in the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls, and any burdensome punishments or restrictions added in the written judgment must be removed." *United States v.*

---

*1 (2d Cir. Sept. 3, 2021) (allowing challenge to term and conditions of supervised release to "proceed in the usual course" because they were not "covered by his appeal waiver.") The appellate waiver here being wholly silent as to supervised release, it does not prevent Wilson from pursuing this appeal.

18

*Rosario*, 386 F.3d 166, 168 (2d Cir. 2004) (internal citations and footnote omitted).

When this happens, the written conditions not announced before the defendant

must be modified or stricken from the judgment. *See, e.g.*, *id.* at 168-69;

*Washington*, 904 F.3d at 208.

### B. The district court here failed to justify the "special" conditions in Wilson's presence and they must therefore be vacated

In this case, the written judgment includes three "special" conditions that

were discussed at the sentencing hearing, but that the district court offered no

justification for imposing.  Absent any judicial findings justifying these "special"

non-mandatory conditions, they should be vacated.

Under 18 U.S.C. §§ 3553(a) and 3583(c), supervised release conditions, as

with any component of a criminal justice sentence, must be based on a sentencing

court's "individualized assessment" of the defendant "based on the facts

presented." *See Gall v. United States*, 552 U.S. 38, 50 (2007); *United States v.*

*Brown*, 653 F. App'x 50, 51 (2d Cir. 2016) (summary order). Supervision

conditions must be "reasonably related" to the relevant statutory sentencing

factors, including the "nature and circumstances of the offense and the history and

characteristics" of the individual defendant. 18 U.S.C. § 3583(d). Conditions must

also "involve[] no greater deprivation of liberty than is reasonably necessary." 18

U.S.C. § 3583(d); *see also, e.g.*, *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir.

2010).  And when a condition implicates a fundamental liberty interest, the

condition must be "narrowly tailored to serve a compelling government interest." *United States v. McLaurin*, 731 F.3d 258, 262 (2d Cir. 2013).

Here the district court did not explain how the three "special" conditions are reasonably related to the goals of supervised release and why they involve no greater deprivation of liberty than necessary. While special conditions two and three (prohibiting contact with the victims of the crime and mandating mental health treatment) may have a basis in the record given the offense conduct, special condition one (concerning financial accounts and reporting) does not. In a non-fraud, non-financial crime case, it is not at all clear why Wilson should have to disclose financial records to the Probation Department; should be restricted him from opening any new financial accounts without the Probation Department's approval; and should be compelled to provide monthly financial statements to the Probation Department.

Given the absence of any on-the-record discussion of the "special" conditions of release, the record is inadequate to demonstrate that those conditions – or at least special condition one – are reasonably related to the statutory sentencing factors and do not unduly deprive Wilson of his liberty interests. They should therefore be vacated.

### C. This Court should clarify that *all* non-mandatory conditions of supervised release must be orally pronounced at sentencing, and the district court here failed to do so, warranting remand on the conditions of supervised release

This Court should vacate the "standard" conditions that were set forth in the written judgment but were not orally imposed, remanding for resentencing to allow the district court an opportunity to explain on the record which, if any, conditions are necessary here and to properly impose those conditions in Wilson's presence.

At sentencing, only the three "special" non-mandatory conditions were mentioned in Wilson's presence. A. 96. But the court imposed an additional thirteen "standard" conditions in the written judgment, many of which create burdensome restrictions on Wilson's liberty. For example:

- Wilson is restricted in his right to travel;
- He must get the probation department's approval for his place of residence;
- He is required to allow his supervising probation officer to visit him at any time and in any place, and to seize any items that the supervisor believes are prohibited under the terms of supervised release
- Wilson's social associations are circumscribed;
- Wilson must work full-time; and
- Wilson must "notify" persons to whom the Probation Department believes he poses a risk.

A 108. Just as the "special" conditions require an individualized assessment, so do the "standard" non-mandatory conditions. Yet the district court did not even discuss let alone justify those conditions. The "standard" conditions were not set forth in the PSR for the district court to implicitly or explicitly adopt, nor did the

21

district court refer to any other source as the basis for the "standard" conditions that appeared in the written judgment.[3]

Though this Court has previously held that a district court need not explicitly refer to every "standard condition" of supervised release during its oral pronouncement of sentence, despite a defendant's right to be present at sentencing, *Truscello*, 168 F.3d 61, it is time to revisit that rule.

In *Truscello*, this Court characterized a written judgment as merely "a clarification of what the oral pronouncement meant by 'supervised release.'" *Id.* at 63. The justification for doing so was that certain conditions of supervised release constitute "basic administrative requirement[s]" that are "essential to the functioning" of supervised release, such as reporting to probation, following the

---

[3] This Court has stated that "incorporat[ing] the conditions listed in the PSR" may be sufficient oral pronouncement of non-administrative conditions. *United States v. Thomas*, 299 F.3d 150, 152 (2d Cir. 2002) (noting that the district "court did not set forth any conditions of the supervision during the sentencing hearing *nor did it indicate that it would incorporate the conditions listed in the PSR*.") (emphasis added). And other courts have said the same about court-wide standing orders that list the conditions of release. *United States v. Rogers*, 961 F.3d 291, 299 (4th Cir. 2020) (noting, however, that the "better practice" is to announce each discretionary condition with the defendant present). Here, though the Eastern District of New York has a standing order that modified "standard" condition twelve of the U.S. Courts form AO 245B (which is the template for a judgment in a criminal case), it would be unreasonable to believe that a criminal defendant knew of the conditions in AO 245B or standing orders if the record contains no evidence that the defendant had been notified of those. *See* United States District Court for the Eastern District of New York, Administrative Order 21-03.

22

probation's officer's instructions and notifying probation of changes in employment or residence. *Id.* at 63-64.

While some or many of the non-mandatory conditions the district court imposed on Wilson may seem intuitive, the governing statute classifies them as discretionary, as does the Sentencing Guidelines' policy statement. *See* 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(c). The governing statutory provisions are clear that courts may impose discretionary conditions *only* if after making individualized assessments that those conditions are "reasonably related" to normal sentencing factors, 18 U.S.C. § 3583(d)(1), and determining that they involve no greater deprivation of liberty than is reasonably necessary under the circumstances. 18 U.S.C. § 3583(d)(2).

As the D.C. Circuit observed, even the most:

pedestrian of the conditions contains a level of detail that cannot plausibly be characterized as implicit in supervised release itself—for example, the requirement to report to the probation office within 72 hours of release rather than, say, within 48 hours or 96 hours. U.S.S.G. § 5D1.3(c)(1). And some of the standard conditions are quite intrusive—for example, the requirements to live somewhere approved by the probation officer, *id.* § 5D1.3(c)(5), and to work full time unless excused by the probation officer, *id.* § 5D1.3(c)(7).

*United States v. Matthews*, 54 F.4th 1, 6 (D.C. Cir. 2020). Consequently, the D.C. Circuit held that a district court must consider whether each discretionary condition is "warranted in the circumstances of each case," "allow the defendant an

23

opportunity to contest" the conditions, and "orally pronounce them at sentencing." *Id.*

Likewise, the Fourth, Fifth, Seventh, Ninth, Tenth and Eleventh Circuit Courts of Appeals have persuasively concluded that *all* non-mandatory conditions of supervision must be orally pronounced, whether they are fairly classified as merely administrative or more substantive. *United States v. Montoya*, 82 F.4th 640, 650-53 (9th Cir. 2023) ("A defendant's right to be present for the imposition of a condition of supervised release to which a defendant could raise a defense applies to *any* condition imposed by the district court that is not mandated by statute, without regard to whether the Guidelines label this condition "standard" under § 5D1.3(c) or "special" under § 5D1.3(d)") (emphasis in original) ; *United States v. Geddes*, 71 F.4th 1206, 1215 (10th Cir. 2023); *United States v. Rodriguez*, 75 F.4th 1231, 1247-48 (11th Cir. 2023) ("We agree with our sister circuits that due process principles generally require a court to pronounce at the sentencing hearing discretionary, but not mandatory, conditions of supervised release."); *Rogers*, 961 F.3d at 297-98; *United States v. Diggles*, 957 F.3d 551 (5th Cir. 2020); *United States v. Anstice*, 930 F.3d 907, 910 (7th Cir. 2019).

In clarifying what conditions must be orally pronounced, the Fifth Circuit observed that the law around what is a "special" and "standard" condition (and thus might warrant different treatment at sentencing) is "confusing." *Diggles*, 957

24

F.3d at 557. Distinguishing different discretionary conditions has "became muddled"; this "confusion" concerning which terms must be orally pronounced at sentencing can best be "eliminated, or at least minimized, by tethering the need to [orally] pronounce [a sentence] to the statute that regulates supervised release conditions: 18 U.S.C. § 3583(d)." *Id.* at 558. Under that logic, any condition that is within the discretion of the court must be orally pronounced, establishing "a bright-line rule that tracks the defendant's right to be present at sentencing." *Id.; see also Geddes*, 71 F.4th at 1215 ("For purposes of whether the conditions must be orally pronounced, the relevant distinction is between conditions mandated by the governing statute and those which are discretionary, even if the sentencing guidelines further subcategorize them as standard.")

As these courts have all recently held, oral pronouncement of any non-mandatory conditions is necessary to protect criminal defendants' due process rights, allowing defendants to "defend against them" and "dispute whether [the condition] is necessary or what form it should take." *Montoya*, 82 F.4th at 650-53; *Rodriguez*, 75 F.4th at 1247-48 ("We agree with our sister circuits that due process principles generally require a court to pronounce at the sentencing hearing discretionary, but not mandatory, conditions of supervised release.").

In contrast, the Second Circuit remains an outlier, allowing district courts to make case-by-case decisions about what conditions are pronounced orally before a

25

defendant, with no bright-line rule ensuring a defendant can challenge these conditions. Not only does this practice impermissibly interfere with a criminal defendant's constitutional rights to be present at sentencing, but it also risks inconsistency and unpredictability.

The recent decisions by other Courts of Appeals undercut *Truscello*'s reasoning and warrant reexamination of its fundamental premise. Non-mandatory conditions should not be considered necessarily part of any supervised release term but should, rather, be imposed only after individualized consideration and determination that each condition is necessary in a process that must allow the defendant an opportunity to contest any of those conditions, during oral pronouncement at sentencing.

The district court in this case having failed to adequately announce the non-mandatory conditions of supervised release to Wilson or justify their application, his rights under the Constitution and Federal Rule of Criminal Procedure 43(a) were violated and this Court should vacate the judgment and remand for resentencing on the conditions of supervised release.

### D. Certain of the "standard" discretionary conditions delegate excessive authority to the probation department, are vague or overbroad and must therefore be vacated

Additionally, certain of these non-mandatory conditions improperly delegate excessive authority to the probation department or are vague and overbroad.

26

It is the district court that has "exclusive" authority to impose non-mandatory supervised release conditions and it may not delegate that unique power to the Probation Department. *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015). Accordingly, though a court may leave to a probation officer "minor" details of a defendant's supervision, it may not grant "decision-making authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion." *Id.* Certain of the conditions imposed on Wilson in the written judgment, however, go beyond the "minor" oversight that can be properly delegated to a probation officer and violate the exclusive delegation of supervised release to the judiciary.

The condition requiring Wilson to work full time unless "excuse[d]" by his Probation Officer ("standard condition number seven), for example, is such an improper delegation of judicial authority. A. 108. The condition authorizes a probation officer on his or her own accord to excuse Wilson from working or seeking employment. The condition does not include any criteria guiding this decision, effectively giving the probation officer "unfettered discretion," *Boles*, 914 F.3d at 112, to determine if Wilson must work. As this Court has held in other similar circumstances, this improper delegation of a district court's supervisory authority should be invalidated. *Matta*, 777 F.3d at 122 (The power to impose non-mandatory supervised release conditions is "vested exclusively in the district

27

court" and a court may not delegate this power to the probation office.) For the same reasons, the travel restriction ("standard" condition number three), the oversight on his place of residence ("standard" condition number five) and the association restriction ("standard" condition eight) – all of which confer on the Probation Department unfettered discretion over key areas of Wilson's life (his freedom of movement, his living arrangements and his interpersonal relationships) – are improper delegations of authority conferred exclusively to the judiciary.[4]

As to vagueness, to comply with due process requirements, conditions of supervised release must be clear enough to inform the defendant of what conduct "will result in his being returned to prison." *United States v. MacMillen*, 544 F.3d 71, 76 (2d Cir. 2008). Therefore, a condition of supervised release will be found unconstitutionally vague if "[people] of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.*

Here, the "risk notification" condition ("standard" condition number twelve), both confers excessive authority on the probation department (allowing a probation officer to unilaterally determine if Wilson "pose[s] a risk to another person"), and is also unconstitutionally vague. First, it does not explain what is

---

[4] As an example of the consequences of such delegation, Wilson has to ask the Probation Department for proof of his restitution payments, which he has not yet received.

meant by posing a "risk to another person;" and, second, it does not clearly detail when or how Wilson would have to notify the other person. A. 108.[5]

Given the improper delegation of judicial authority, as well as the vagueness and overbreadth of certain of the conditions, the written judgment's conditions requiring Wilson to work at least 30-hours per week, restricting his travel, overseeing his place of residence, restricting his associations and imposing the burden to notify others of his "risk," should all be vacated.

## CONCLUSION

For the reasons argued above, this Court should vacate the non-mandatory conditions that were not pronounced orally and should remand this case for resentencing.

Dated this 25th day of January 2024.

Respectfully submitted,

By: /s/ Megan W. Benett
Megan W. Benett, Esq.

---

[5] While this Court has, in the past, declined to address such "risk notification" requirements, finding that the claim was "unripe" absent a violation of the condition (*see United States v. Decker*, 838 F. App'x 640, 641-42 (2d Cir. 2021)), the very existence of the condition may have an unconstitutional chilling effect on a defendant's constitutionally-protected political or social activities. It should not be that Wilson must first violate the condition of supervised release with what may well be protected conduct in order for this Court to rule on the propriety of the condition.

485 Lexington Avenue
28th Floor
New York, NY 10017
Telephone: (212) 973-3406
mbenett@kreindler.com

*Attorney for Defendant-Appellant,*
*Robert Wilson*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Fed.R.App.P. 32(a)(7)(B) and Second Circuit Rule 32-1, that this brief is reproduced using proportional typeface of Times New Roman, 14 points in size, is double-spaced and consists of 6,698 words, as calculated in the word count program in Microsoft Word, including footnotes and headings and quotations.

Dated:  January 25, 2024

By_____/s/ Megan Wolfe Benett

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on January 25, 2024 I served all parties of record using this Court's ECF system with hard copies following by United States Postal Service and served a hard copy of this brief and supporting appendices on Robert Wilson via U.S. mail service to his last known address.

Dated:  January 25, 2024

By_____ /s/ Megan W. Benett